**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                               No. 1:23-cr-201-3-WJ

DANNY BACA,
a.k.a. "SCRAPPY,"

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING THE UNITED STATES' APPEAL and
## REVERSING THE MAGISTRATE JUDGE'S ORDER OF RELEASE

**THIS MATTER** comes before the Court upon the United States' Appeal (**Docs. 70 & 82**) of the Magistrate Judge's Release Order (**Doc. 69**). On May 20, 2024, the Court held a hearing on the United States' appeal of the order releasing Defendant Danny Baca from custody to attend an in-patient drug rehabilitation program. After conducting a *de novo* review, the Court **GRANTS** the United States' appeal and **REVERSES** the Magistrate Judge's release order.

## BACKGROUND

Defendant Baca is charged in Counts 1, 2, 5, and 6 of the Indictment. *See* **Doc. 22** (attached as Exhibit). Specifically, he is charged[1] with: (1) conspiracy to distribute a controlled substance, (2) distribution of a controlled substance, (3) felon in possession, and (4) possessing a firearm in furtherance of a drug trafficking crime. *Id.*

---

[1] Again, Defendant Baca is charged in Counts 1, 2, 5, and 6—however, the Court listed these four crimes in the order they appear on the Indictment as numbers 1–4. Defendant is not charged in Counts 3 or 4—as those pertain only to Defendant Manuel Young and Defendant Crystal Kelley, respectively. Additionally, while the Court can adequately describe the Counts of the Indictment charged against Defendant Baca, the easiest way to reference the vast arsenal of weapons and ammunition for which the United States seeks forfeiture was to attach a copy of the Indictment as an exhibit to this opinion.

Defendant Baca appeared for his initial presentment on July 7, 2023, in front of Magistrate Judge Barbara Evans (**Doc. 43**). Judge Evans issued a temporary detention order (**Doc. 44**) and scheduled a detention hearing for July 14, 2023. *See* **Doc. 43**. When July 14th came around, defense counsel requested a continuance of the detention hearing until July 18, 2024 (**Doc. 47**). Magistrate Judge Laura Fashing granted the continuance. Then, at the continued hearing on July 18th, another continuance was requested (**Doc. 48**). Magistrate Judge Kirtan Khalsa obliged.

On July 20, 2023, Magistrate Judge Paul Briones conducted the detention hearing (**Doc. 52**). Judge Briones issued an Order that Defendant Baca be detained pending trial (**Doc. 53**). In this Order, Judge Briones found that: (1) a rebuttable presumption[2] arises under 18 U.S.C. § 3142(e)(3), (2) no condition or combination of conditions of release will reasonably assure the safety[3] of any other person and the community, and (3) no condition or combination of conditions of release will reasonably assure the Defendant's appearance[4] as required. ***Id.* at 1–2**. Specifically, Judge Briones stated the following on the record:

> [B]ased on what's before me with all of the failures to appear and all of the violations, they do look recently more drug-related . . . . I would find that he is a flight risk not likely to obey the Court's rules . . . . the number of weapons that I'm seeing in there and the amount of cash tell me he is -- he's a flight risk . . . . I'm making the decision based upon at this time the danger to the community and the flight risk based upon the arsenal and such.

**Doc. 79 (Det. Hrg. Tr.) at 18–21**. At the same time, however, Magistrate Judge Briones scheduled the matter for a rehearing. ***Id.* at 18 & 20**.

On October 12, 2023, Judge Briones held a status conference (**Docs. 58 & 80**). Defendant renewed his request, **Doc. 80 (Det. Hrg. Status Conf.) at 3–4**, to be released to La Pasada with

---

[2] Judge Briones found a rebuttable presumption exists, but also concluded that Defendant Baca presented "evidence sufficient to rebut the presumption." **Doc. 53 at 2**.
[3] This finding was based on a clear and convincing evidence standard. **Doc. 53 at 2**.
[4] This finding was appropriately based upon a preponderance of evidence standard. **Doc. 53 at 2**.

GPS monitoring or to be released when a bed becomes available at Cenikor.[5] The United States opposed release from custody and release to a halfway house. *Id.* **at 7–8**. Ultimately, Magistrate Judge Briones ordered the Defendant "remain detained but [be] released when a bed becomes available for an inpatient treatment facility." *Id.* **at 12**. No Order was entered at this time.

Apparently, several months later, a bed became available at Cenikor (**Doc. 68 at 1**), and on March 5, 2024, Mr. Baca—through counsel—filed a Motion for Release from Custody. In this pleading, Defendant Baca noted "The government maintains its opposition" to release. *Id.* **at 2**.

Two days later, before the United States responded, Judge Briones issued an Order (**Doc. 69**) releasing Defendant Baca from pretrial detention to the custody of Cenikor Treatment facility. That very same day, the United States filed an Emergency Appeal (**Doc. 70**)—alleging the Magistrate Judge did not provide the United States time to respond in accordance with the Local Rules. *See* D.N.M.LR-CR 47.8. In addition to filing the appeal under 18 U.S.C. § 3145, the United States also requested "a stay of execution of the release order." *Id.* **at 2**.

A flurry of filings then commenced over the next 48 hours: Defendant Baca filed a Response to the United States' Appeal (**Doc. 71**), the United States then filed a Reply (**Doc. 72**), Defendant Baca subsequently filed motion to strike the United States' Reply (**Doc. 73**), after which the United States filed a Response (**Doc. 74**) to the motion to strike.

This Court issued a stay of Judge Briones' order (**Doc. 75**) on March 11, 2024. Additional briefing was also ordered.

The United States filed its' opening brief on March 25th (**Doc. 82**), Defendant Baca filed his Response on April 9th (**Doc. 88**), and the United States' Reply (**Doc. 92**) was filed on April

---

[5] Cenikor is a nonprofit drug and mental health rehabilitation center—with locations across several states. These facilities assist individuals with drug and/or alcohol addiction (as well as behavioral health issues). Cenikor offers treatment programs of various lengths. Relevant here is Defendant Baca's request to be released to Cenikor's 90-day inpatient substance abuse treatment program in Farmington, New Mexico (**Doc. 68**).

15th. The Probation Office also filed a Memorandum (**Doc. 83**) addressing[6] detention. The hearing was originally set for April 19, 2024, **Doc. 84**, but was ultimately continued until May 20, 2024 (**Docs. 91, 94, 95**).

After extensively reviewing all then-available information[7] in the case and holding a hearing[8] on the matter, the Court now issues this Memorandum Opinion and Order **GRANTING** the United States' appeal.

For the reasons below, the Court finds Defendant is both a flight risk and a danger to the community such that there is no condition, or combination of conditions, that will reasonably assure his appearance or the safety of the community.

## DISCUSSION

If a court determines a Defendant poses a "serious risk" of fleeing or threatening the safety of the community, that individual should be detained pretrial. *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017). Whenever a Defendant is ordered to be detained by a Magistrate Judge, that individual may file an "appeal from a release or detention order." 18 U.S.C. § 3145(c). The same is true for the United States—insofar as appealing an order of release is permitted.

Here, however, the Magistrate Judge *sua sponte* reconsidered its detention order based on prior arguments of defense counsel. But this does not matter. The Court assumes, without deciding, that the detention hearing was reopened under § 3142(f) based upon previously nonexistent

---

[6] Of note, Pretrial Services has filed four Reports—each time stating they do not believe any condition or combination of conditions will reasonably assure the appearance of Defendant (**Docs. 45, 51, 83, 96**).

[7] In ruling on Defendant's appeal of the detention order, this Court examined the following: the Complaint (**Doc. 1**), the Indictment (**Doc. 22**), the Pretrial Services Reports (**Docs. 45, 51, 83, 96**), the Detention Order (**Doc. 53**), the Release Order (**Doc. 69**), the Detention Hearing Transcript (**Doc. 79**), the Status Conference Transcript (**Doc. 80**).

[8] New evidence may be presented—and considered—at a detention appeal. *United States v. Cisneros*, 328 F.3d 610, 617 (10th Cir. 2003); *United States v. Garcia*, 445 F. App'x 105, 108 (10th Cir. 2011) (per curiam) (unpublished).

At the appeal hearing, counsel for the United States moved to admit two audio-visual exhibits—with no objection from defense counsel. The Court admitted these previously lodged exhibits (**Doc. 93**) and noted that this evidence had already accompanied the United States' Reply (**Doc. 92**). Additionally, the parties agreed that all the filings on the docket were subject to judicial notice and therefore permissible for the Court to consider.

material information. Irrespective of the procedures below, the United States timely and appropriately filed its appeal (**Doc. 70**) once the Magistrate Judge's Order of Release (**Doc. 69**) was issued.

On appeal, a district court acts *de novo* and must make its own independent judgment. *See Cisneros*, 328 F.3d at 616 n.1. When deciding whether pretrial detention is warranted, this Court is governed by the 18 U.S.C. § 3142 factors. This means a Defendant may be detained pending trial only if the Court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see also Cisneros*, 328 F.3d at 616 (stating that the government must prove risk of flight by a preponderance of the evidence and dangerousness to any other person and the community by clear and convincing evidence); *United States v. Ramirez-Olivas*, 780 F. App'x 621, 623 (10th Cir. 2019) (unpublished) (same).

Here, Defendant argues that the release to Cenikor—on its own or in combination with GPS monitoring—will reasonably assure his appearance and the safety of the community (**Doc. 88,** *passim*). Defendant puts the cart before the horse—arguing that he *will not* be dangerous once he "completes treatment" at Cenikor. *Id.* **at 7**. This argument misses the mark. In much the same vein, Defendant states "the risks of danger and flight" will be "mitigated by placement in a controlled, 90-day treatment program." *Id.* **at 2–3**. In support of this release to Cenikor plan, defense counsel argues Mr. Baca will be "under lock and key 24 hours a day." *Id.* **at 3**. This proffer does not persuade the Court.

## I. Defense Counsel's Concerns

At the outset, the Court addresses two concerns raised by defense counsel at the hearing.

The first point deals with the rebuttable presumption found in 18 U.S.C. § 3142(e).

Generally, persons charged with a crime are not detained pretrial. *Id.* at § 3142(b). For some charges, however, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *Id.* at § 3142(e)(3)(E). When this presumption is invoked, the burden of production shifts to the Defendant. *See United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991) (per curiam).

At the original detention hearing, Magistrate Judge Briones asked defense counsel to "argue what facts . . . might overcome that presumption." **Doc. 79 (Det. Hrg. Tr.) at 4**. In response, counsel asserted the following: (1) Defendant Baca's criminal history is tied to substance abuse issues, (2) he has a girlfriend, (3) he's a lifelong resident of Albuquerque, (4) he has children in the city, and (5) he was consistently employed from 2017–19. ***Id.* at 4–6**. At the appeal hearing, this Court asked the same question—and was met with the substantially similar answers. It is true (as defense counsel notes), that the burden to rebut the presumption is low (**Doc. 88 at 5**). But in this Court's view, a proffer[9] that Mr. Baca wants to attend Cenikor treatment does not satisfy this burden. *Compare **id.* at 7**, *with* **Doc. 92 at 1–2**. And neither does defense counsel's proffer that very few of the weapons in the forfeiture notice are properly attributed to Mr. Baca (**Doc. 88-2 at 4**). The United States aptly points this out, *see* **Doc. 92 at 1**, stating "he does not point out what evidence, if any, serves to rebut th[e] presumption. An attorney proffer of a willingness to complete treatment is not evidence." And as the Tenth Circuit has explained, "statement[s] in a brief [are] not evidence." *United States v. Robertson*, 852 F. App'x 331, 338 n.5 (10th Cir. 2021) (unpublished). As it stands, the Court has virtually no evidence—outside of defense counsel's

---

[9] Although § 3142(f)(2) provides that evidence can be presented by way of proffer, the Court is not required to accept such proffers as evidence. *See United States v. Johnson*, 123 F. App'x 377, 380 (10th Cir. 2005) (per curiam) (unpublished).

proffers—to rebut this presumption. Although the Court is inclined to find sufficient evidence was not presented to rebut the presumption, the Court assumes that Defendant Baca carried this burden. Because the outcome does not hinge on this point, the Court provides the benefit of the doubt to Defendant Baca.

Assuming Defendant has carried his burden of production, the rebuttable presumption is but one factor for this Court to consider under § 3142. *See infra* ¶ II.A.–D. Thus, to the extent that the evidence is sufficient to overcome the presumption of detention, Defendant Baca is still not entitled to release. *See infra* ¶¶ II–III.

Second, it is undisputed that "Nothing in this section shall be construed as modifying or limiting the presumption of evidence." 18 U.S.C. § 3142(j). There is no wiggle room here. The Court's finding of facts, legal conclusions, and ruling are all rooted in the presumption of innocence.

Defendant argues that § 3142(g)'s requirement that a court consider the weight of the evidence is in contradiction with the presumption of innocence. This is incorrect. *See, e.g., Robertson*, 852 F. App'x at 339–40 (noting the charged conduct may be considered when deciding pretrial detention); *United States v. Bragg*, 2021 U.S. App. LEXIS 38591, at *8 (10th Cir. Dec. 30, 2021) (per curiam) (unpublished) (rejecting the argument that "the weight of the evidence was contrary to the presumption of innocence"); *cf. Cisneros*, 328 F.3d at 618–19 (highlighting the strength of the evidence). This factor is not a pretrial determination of guilt—instead, it quite clearly focuses on whether a pretrial detainee poses a danger to the community or a risk of flight. It stands to reason that the more strongly the evidence indicates the Defendant committed the crime charged, the more likely it is that he poses a danger to the community if released. Nothing more, nothing less.

**II. Statutory Factors Under Section 3142(g)**

Next, the Court looks at the statutory factors for detention as laid out in 18 U.S.C. § 3142(g).

The statute makes clear that the Court "shall . . . take into account," the following: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the Defendant, (3) the history and characteristics of the Defendant, and (4) the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g)(1)–(4).

### A. Nature and circumstances

Here, the charges involve both controlled substances and firearms—specifically: conspiracy to distribute, distribution of 40 grams and more of fentanyl, felon in possession, and possessing a firearm in furtherance of a drug trafficking crime. The drug that Defendant Baca conspired to distribute, fentanyl, is extremely dangerous (and often deadly). *See United States v. Vallez*, __ F. Supp. 3d __, 2024 U.S. Dist. LEXIS 78985, at *5 n.5 (D.N.M. 2024) (citing the DEA press release on the deadly nature of fentanyl). Indeed, between the filings on the docket and the testimony at the hearings, the United States carried its burden of establishing that Defendant Baca arranged the sale of 2,000 fentanyl pills (also characterized as "two boats").

The Court concludes that the nature and circumstances of these charges weigh in favor of detention.

### B. Weight of the evidence

The United States established that Defendant Baca arranged a drug transaction—wherein he (unknowingly) took a confidential human source to buy drugs. This interaction was recorded and has been lodged with the Court (**Doc. 93**).

8

Defendant does not challenge this evidence, but instead suggests his "very minor" role in this "non-violent" crime favors release (**Doc. 88 at 6**). He also argues that this is not an A-level drug offense—meaning it is less serious. *Id.* These are great arguments for a variance or departure after the conclusion of the guilt phase (assuming Defendant is convicted of the charges against him), but these arguments do not move the needle for a pretrial detention determination.

Thus, the Court sides with the United States. First, the weight of the evidence is strong. *See supra* ¶ I (noting the weight of the evidence factor does not undermine the presumption of innocence). With respect to weight, on-point case law explains that audio-visual recordings are indicative of a strong case. *See United States v. Wanjuki*, 2023 U.S. App. LEXIS 31865, at *4 (10th Cir. Dec. 4, 2023) (per curiam) (unpublished) (finding the weight of the evidence was strong because it included "video footage"); *see also United States v. Zhe Zhang*, 55 F.4th 141, 150 (2d Cir. 2022) ("video surveillance" linking Defendant to the crime indicated "a strong case").

The evidence against Defendant Baca is substantial and weighs in favor of detention.

### C. History and characteristics

This factor is a closer call, but still favors detention. On one hand, Defendant Baca was born and raised in New Mexico. He has family ties to the area. On the other hand, Defendant Baca has a criminal record, a history of substance abuse, was on state probation when he allegedly committed the instant offenses, and has a less than stellar record of appearing[10] at court proceedings.

It appears that Defendant Baca's "family ties" and "length of residence in the community"

---

[10] Defendant Baca: (1) failed to appear in court in October 2012, (2) failed to appear in court in April 2013, (3) failed to appear in court in August 2013, (4) failed to report to pretrial services in August 2013, (5) violated conditions of release in June 2014, (6) violated probation by absconding in January 2015, (7) violated probation by absconding in April 2016, (8) violated probation for drug use four times between May and June 2018, (9) violated conditions of release in April 2019, and (10) failed to appear in court in July 2019. *See* **Doc. 51 at 5–8**.

are strong. At the same time, however, these "pros" are outweighed by the "cons" of his past conduct, substance abuse, criminal history, lack of appearance at court proceedings, and violations on probation. In this Court's view, Defendant Baca has been provided significant leniency in his state court proceedings—as he usually received a suspended sentence and probation. Unfortunately, he squandered away each of these chances—racking up violation after violation as to his conditions of release and/or probation; failing to appear; and then picking up new criminal charges (**Docs. 45 & 51).**

Defendant Baca's history—with respect to his (1) failures to appear, and (2) inability to abide by probation—establish he is a flight risk. *Cf.* **Doc. 53 at 3; Doc. 79 (Det. Hrg. Tr.) at 17– 21**. Once again, detention is favored for Defendant Baca.

### D. Nature and seriousness of danger

At the outset, the Court notes that this statutory safety concern is broader than sheer physical harm. Indeed, "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted). The nature and seriousness of the danger in this case are related to Defendant's history of narcotics trafficking and history of firearms charges.

Here, the United States presented clear and convincing evidence that Defendant Baca was involved a large-scale drug distribution conspiracy. The amount of narcotics and number of weapons were significant. On this point, the Court agrees with the Magistrate Judge's remarks at the detention hearing—that is, Defendant Baca is "a continuing danger to the community" based upon his "selling fentanyl" as well as the "firearms and ammunition." **Doc. 79 (Det. Hrg. Tr.) at 17–18**. As explained in the Magistrate Judge's Order of Detention, "Defendant's access to

significant cash and weapons . . . coupled with existence of weapons and illegal drug[s]" establishes that Defendant "possesses [sic] a significant danger to the community." **Doc. 53 at 3**.

Plus, this is not Defendant Baca's first arrest for drug charges (**Doc. 45 at 6 & 7**). Nor is this his first arrest for possession of a firearm as a felon. *Id.* **at 6**. Rather, Defendant Baca's "pattern of similar criminal activity" is indicative of the "likelihood of future crimes." *United States v. Jackson*, 903 F.2d 1313, 1320 (10th Cir. 1990); *see also Maryland v. King*, 569 U.S. 435, 453 (2013) ("[A]n arrestee's past conduct is essential to an assessment of the danger he poses to the public[.]"). So too here. Defendant Baca's prior history is strong evidence as to the effectiveness (or lack thereof) that lesser forms of pretrial restraint would achieve.

As outlined above, Defendant Baca allegedly committed these offenses while on state probation. Logically, that means his state probation conditions did not discourage his conduct. And if past behavior informs[11] future behavior, Defendant Baca has proven to this Court that he will not reform his behavior if released. In fact, Pretrial Services echoed this point—recommending detention (**Docs. 45, 51, 83, 96**).

Simply stated, the risks of releasing Defendant Baca are too great. His own history proves those risks cannot be mitigated with any condition or combination of conditions.

---

[11] A court is "well within its discretion to invoke the maxim that the best predictor of future behavior is past behavior." *United States v. Burgdorf*, 466 F. App'x 761, 762 (10th Cir. 2012) (Gorsuch, J.) (unpublished). And that is exactly what the Court does here. In fact, another panel invoked the same maxim, stating:

> This defendant's assurances that he has learned his lesson and is now irrevocably committed to a law abiding life hardly resonates in the crucible of unremitting criminal behavior. And it is, indeed, mystifying how anyone would think the echo of hollow promises uttered by defense counsel could add credence to the incredible. No court should ever be required to give lengthy or serious consideration to such cultivated and dubious assertions. Past behavior is the best predictor of future behavior.

*United States v. Estrada-Lozano*, 221 F. App'x 742, 749 n.9 (10th Cir. 2007) (unpublished).

### III. This Court's Findings

After considering all the credible and reasonably reliable evidence, the proffers and arguments of counsel, the controlling and persuasive authorities on the issues, and the factors set forth in 18 U.S.C. § 3142(g), the Court **FINDS** the following:

#### A. *Flight risk*

1. Defendant Baca has a known criminal history (**Docs. 45 & 51**).

2. Defendant Baca has a history of "absconding," "failure to appear," and "criminal activity while under supervision." Specifically, Defendant Baca: (1) failed to appear in court in October 2012, (2) failed to appear in court in April 2013, (3) failed to appear in court in August 2013, (4) failed to report to pretrial services in August 2013, (5) violated conditions of release in June 2014, (6) violated probation by absconding in January 2015, (7) violated probation by absconding in April 2016, (8) violated probation for drug use four times between May and June 2018, (9) violated conditions of release in April 2019, and (10) failed to appear in court in July 2019. *See* **Doc. 51 at 5–8**.

3. "The amount of cash" recovered is also indicative of Defendant's likelihood of being a flight risk. **Doc. 79 (Det. Hrg. Tr.) at 19**.

4. If convicted, Defendant Baca faces a statutory mandatory minimum sentence of ten years. *See* 18 U.S.C. § 924(c)(1)(A)(i); 21 U.S.C. §§ 846, 841(b)(1)(B)(vi). These mandatory sentences certainly weigh on Defendant's mind and increase his risk of flight. This is especially true given that Defendant Baca is facing a lengthier sentence than he did on the state charges for which he failed to appear. *See* **Doc. 51**. Thus, he has an even greater motive to not appear than ever before. Thus, the Court finds it is more likely than not that Defendant Baca will either fail to obey the rules at Cenikor or will flee.

5. Pretrial Services does not believe any condition or combination of conditions will reasonably assure the appearance of Defendant (**Docs. 45, 51, 83, 96**). Pretrial Services found Defendant Baca poses a risk of nonappearance for the following reasons: (1) Nature of Instant Offense, (2) Substance Abuse History, (3) Mental Health History, (4) Pretrial, Probation, Parole, or Supervised Release Status and Compliance, (5) Criminal Activity while under Supervision, (6) Gang Involvement, (7) History/Charge Involving a Child, (8) History/Charge Involving Violence/Domestic Violence, (9) Pattern of Similar Criminal Activity History, and (10) Criminal History. *See* **Doc. 45 at 2; Doc. 51 at 4**.

Each of these findings are made by a preponderance of the evidence, as required.

### B. Danger to the community

1. Defendant Baca has a known criminal history—one that includes a "history of violent crime." **Docs. 45 & 51**.

2. Defendant Baca has established a poor track record of appearing at future court proceedings when released, on probation, parole, or otherwise. ***Id.***

3. Defendant Baca has previously engaged in "criminal activity while under supervision." Of note, the Indictment (**Doc. 22**) charges a date range of October 15, 2022, through February 2, 2023. During this timeframe, Defendant was on state probation (**Doc. 51 at 8**). The Court finds it highly significant that the state-level supervision did not deter Defendant from engaging in the instant (alleged) drug distribution conspiracy.

4. Defendant Baca has previously engaged in a similar criminal activity. **Doc. 51 at 4 & 7**.

5. Defendant Baca is facing conspiracy charges involving a large amount of fentanyl, possession of a firearm (**Doc. 83 at 1**). Such charges, in and of themselves, constitute a danger to the safety of any other person or the community. *See Cook*, 880 F.2d at 1161.

6. Pretrial Services determined that no condition or combination of conditions will mitigate the danger Defendant Baca poses to the safety of the community (**Docs. 45, 51, 83, 96**). Specifically, Pretrial Services found Defendant Baca poses a risk of danger for the following reasons: (1) Offense Charged and/or Defendant's Conduct During Arrest for Instant Offense, (2) Mental Health History, (3) Substance Abuse History, (4) Criminal Activity while under Supervision, (5) History of Failure to Appear, (6) Lack of Verifiable, Legitimate Employment, (7) Pretrial, Probation, Parole, or Supervised Release Status and Compliance, and (8) Criminal History. *See* **Doc. 45 at 2; Doc. 51 at 4**.

Each of these findings are made by a clear and convincing standard, as required.

## IV. Difference of Opinion as to Efficacy of Pretrial Treatment

The purpose of pretrial detention under the Bail Reform Act, 18 U.S.C. §§ 3141–3156, is to regulate "a pressing societal problem." *United States v. Salerno*, 481 U.S. 739, 747 (1987). The Act's framework is targeted at mitigating a Defendant's "risk of flight, or danger to a witness." *Id.* at 749. Under the Act, a Defendant is either detained or released. There is no in-between. Release to a "community treatment center" is release—as a Defendant outside of custody is not "completely subject to BOP's control." *Reno v. Koray*, 515 U.S. 50, 63 (1995). The entire point of the detention-versus-release determination is focused on safety and the Defendant's appearance. Rehabilitation, treatment, and reintegration are not the focus of 18 U.S.C. §§ 3141 *et seq*.

By contrast, one of the purposes of sentencing is to provide a Defendant with treatment. 18 U.S.C. § 3553(a)(2)(D). Likewise, supervised release is intended to "encourage rehabilitation." *United States v. Haymond*, 139 S. Ct. 2369, 2382 (2019).

The undersigned, after more than twenty-two years on the federal bench, finds that pretrial release—or post-conviction/pre-sentencing[12] release—for in-patient drug treatment is less efficacious when Defendants are facing mandatory-minimum sentences. Naturally, there is a difference of opinion[13] on this issue across the District of New Mexico (and across the many districts nationwide). Unfortunately, detention is necessary for individuals with a history of recidivism, substance abuse, and criminality—such as Defendant Baca. *See* Marie VanNostrand & Gena Keebler, *Pretrial Risk Assessment in Federal Court*, 73:2 FED. PROB., Sept. 2009, at 17–18 (noting that location monitoring and substance abuse treatment can still result in higher pretrial failure rates), available at [https://perma.cc/Q59E-Y8RQ].

Below, the Court highlights some cases in which various judges in this District have reasoned pretrial in-patient treatment is not warranted.

The first such case is *United States v. Valdez*, No. 21-cr-562, 2022 U.S. Dist. LEXIS 158084 (D.N.M. Sept. 1, 2022), wherein U.S. District Judge James Browning expressed serious "doubts" about releasing a pretrial Defendant based upon his "criminal history show[ing] eight failures to appear, four failures to comply, and two unsatisfactory discharges from probation." *Id.* at *37. Similarly, this very Court has ruled that "electronic monitoring" and "rehabilitation therapy" were insufficient conditions for a Defendant who showed a "consistent unwillingness to comply with court orders" and abused intoxicating substances. *United States v. Begay*, No. 19-cr-

---

[12] Post-conviction release pending sentencing is governed by 18 U.S.C. §§ 3143 and 3145. But, in much the same way, a judge may release a Defendant if he "is not likely to flee or pose a danger to the safety of any other person or the community if released" and provides exceptional reasons supporting release. *Id.* at § 3143(a)(1).

[13] This Court is aware of at least one instance wherein sentencing was continued so the Defendant could complete a two-year long inpatient substance abuse treatment program at the Delancey Street in-patient substance treatment center. In this Court's view, that deprives the Defendant the benefit of his efforts to get clean. Especially so given that Defendant and the United States had entered into a Rule 11(c)(1)(C) plea agreement enforcing the statutory mandatory minimum sentences. *See* **Docs. 32, 37, 45, 48** (D.N.M. Case. No. 21-cr-1233). Thus, after (ostensibly) completing substance abuse treatment, the Defendant is still facing both the statutory minimums and the specific sentence contained in the plea.

564, 2020 U.S. Dist. LEXIS 171298, at *9 (D.N.M. Sept. 18, 2020). U.S. District Judge Kea Riggs

ruled similarly in *United States v. Lugo*, No. 23-cr-1070, 2023 U.S. Dist. LEXIS 131858 (D.N.M.

July 31, 2023). In this case, the "weight of the evidence and the rebuttable presumption" factored

heavily in denying Defendant's pretrial release for substance abuse treatment. *Id.* at *5–7 & 9.

Finally, U.S. District Judge Matthew Garcia recently ruled that pretrial detention was necessary

when a Defendant had "a history of noncompliance with court orders . . . and absconding." *United*

*States v. Merino-Ramirez*, No. 23-cr-944, 2023 U.S. Dist. LEXIS 116715, at *3 n.3 (D.N.M. July

7, 2023).

   Of course, there are situations wherein judges in district courts[14] far and wide have granted

release to permit inpatient treatment. This is, of course, fine. And sometimes may very well be

necessary. But the undersigned's concern is grounded in the fact a Defendant facing a mandatory

minimum has nothing to earn[15] (from the sentencing Court) for successfully completing inpatient

treatment. Plus, as then-U.S. District Judge Ketanji Brown Jackson stated, the relevant statutory

inquiry under § 3142(g) is "*not* the benefits that a defendant's release would bring . . . . Rather, the

---

[14] *See, e.g., United States v. Beasley*, No. 22-cr-162, 2022 U.S. Dist. LEXIS 170713 (D. Idaho Sept. 20, 2022); *United States v. Hannah*, No. 19-cr-115, 2020 U.S. Dist. LEXIS 126410 (D. Alaska Mar. 11, 2020); *United States v. Germany*, Nos. 23-cr-170 & 19-cr-66, 2023 U.S. Dist. LEXIS 230873 (S.D. Ohio Dec. 29, 2023); *United States v. Bell*, No. 12-cr-67, 2012 U.S. Dist. LEXIS 81461 (E.D. Va. June 11, 2012); *United States v. Woodruff*, No. 16-cr-40020, 2020 U.S. Dist. LEXIS 65635 (D. Kan. Apr. 14, 2020); *United States v. Parsons*, No. 13-cr-10111, 2012 U.S. Dist. LEXIS 205871 (D. Mass. June 6, 2013); *United States v. Jeffries*, No. 22-cr-197, 2022 U.S. Dist. LEXIS 242122 (S.D. Iowa Dec. 29, 2022).

[15] This Court has in certain cases allowed Defendants to earn a downward variance. Typically, however, this occurs post-conviction /pre-sentencing instead of pretrial. *See, e.g., United States v. Subia*, __F. Supp. 3d __, 2024 U.S. Dist. LEXIS 34706 (D.N.M. 2024) (continuing sentencing to allow Defendant to "earn his requested variance" and later granting the downward variance based upon "exceptional conduct while on pretrial supervision"); *United States v. Loya*, No. 21-cr-244, at **Docs. 52, 65, 73, 81** (noting that after Defendant pleaded guilty, sentencing was continued in order to allow Defendant to attend substance abuse treatment and earn a downward variance); *see also United States v. Paz*, No. 20-cr-1362, at **Docs. 39, 62, 63** (continuing the pretrial detention appeal hearing to allow Defendant to attend inpatient substance abuse treatment where no mandatory minimum was involved and neither the United States nor the Probation Office objected).

   This Court is not the only court to use the word "earn" with respect to downward variances. *See, e.g., United States v. Beierle*, 716 F. App'x 782, 788 (10th Cir. 2017) (unpublished); *United States v. Washington*, 968 F.3d 860, 864 (8th Cir. 2020); *United States v. Claiborne*, 439 F.3d 479, 481 (8th Cir. 2006).

statute requires the Court to evaluate *the danger* that would be posed *by the person's release*."
*United States v. Lee*, 451 F. Supp. 3d 1, 7 (D.D.C. 2020) (emphasis in original) (cleaned up).

Here, in particular, neither Defendant Baca's adherence to the rules and regulations at Cenikor—nor his presence therein—can be reasonably assured. No substance abuse residential treatment facility can contain someone who does not want to be there—and Defendant Baca has a prior history of absconding and violating the terms of probation/supervision. This is not a knock against this particular facility, by any means. It does not matter if the release plan was for La Pasada Half-way House or the Delancey Street residential treatment program; a Defendant can "need" treatment, but not be entitled to such treatment pretrial if (and when) he presents a risk of flight or danger to the community. Put another way:

> While the court believes that a drug treatment program would be beneficial to Defendant personally, Defendant could leave the facility at any time and pose a danger to the community. A GPS monitor is a deterrent to leaving, but he could simply remove it and leave. The treatment program can be a difficult experience and it does not have the ability to prevent Defendant from leaving. Therefore, the court concludes that the voluntary treatment program and GPS monitor do not adequately manage Defendant's potential danger to the community posed by his repeated drug distribution.

*United States v. Bennett*, No. 21-cr-59, 2021 U.S. Dist. LEXIS 135129, at *4–5 (D. Utah July 19, 2021).

## V. Potential Prejudice to the United States and the Co-Defendants

As explained below, the public as well as ***all*** the co-Defendants have an interest in a speedy trial. 18 U.S.C. § 3161(h)(7)(A) (emphasis added). These overarching principles warrants some discussion. Especially since Defendant Baca is not pending trial alone.

First and foremost, the Court does not have absolute authority to continue a case under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)–(8); *Bloate v. United States*, 559 U.S. 196, 210 (2010) ("[D]elays resulting from a continuance granted by any judge *may* be excluded, but only if

the judge finds that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial and records those findings." (internal quotation marks omitted)). Neither the Court's good intentions nor Defendant's desire to attend pretrial substance abuse treatment are listed as excludable under the Act. So where does this request fall? Well, it certainly does not fit into the "ends of justice" exception. *See United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009); *United States v. Margheim*, 770 F.3d 1312, 1317 (10th Cir. 2014). Excluding Defendant Baca's speedy trial time at Cenikor for the "ends of justice" would fly in the face of this narrow exception. *United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir. 1989). Maybe this request fits under the pretrial motion exception? *See* 18 U.S.C. § 3161(h)(1)(D). But this prospective exclusion is also unavailing. As defense counsel already noted (**Doc. 88 at 7**), if Defendant Baca is released to complete the 90-day program at Cenikor then another motion for release would follow. Ostensibly, Defendant Baca's detention-or-release status on this later round of motions would not be decided until the end of 2024. That is too long—as delays in excess of one year are presumptively prejudicial. *See United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006); *cf. Barker v. Wingo*, 407 U.S. 514 (1972).

Obviously, there are competing interests. On one hand, Defendant Baca would prefer to have pretrial substance abuse treatment (which would delay trial). On the other hand, his co-Defendants—as well as the public—are entitled to a speedy trial. The very concept of speedy trial depends upon both the private and public interests in an efficient justice system. *See United States v. Loud Hawk*, 474 U.S. 302, 312–13 (1986). Here, these interests outweigh Defendant Baca's desire for a continuation to attend treatment.

For this analysis, the Court focuses on "reasonableness" under Section 3161(h)(6). *See United States v. Cortes-Gomez*, 926 F.3d 699, 705 (10th Cir. 2019). The case law outlining

reasonable delays attributable across co-Defendants does not support delaying trial for the sole benefit of Defendant Baca. *See Margheim*, 770 F.3d at 1319 (listing the three factors that guide a district court). Here, not all the co-Defendants are released. And although speedy trial demands have not been filed, as the one-year mark[16] approaches the Court anticipates such filings. Finally, the circumstances (*i.e.*, to allow one co-Defendant to attend inpatient treatment) do not "further the purpose" of efficient prosecutorial and judicial resources.

Because subparagraph (h)(6) is rooted in "judicial efficiency," *United States v. Vogl*, 374 F.3d 976, 983 (10th Cir. 2004), the Court cannot fathom how preferencing one Defendant's wishes to the detriment of the others' speedy trial rights is reasonable. Of course, the calculus changes if this were a substantive motion or competency proceeding on behalf of one Defendant (as that is different in kind). Those issues may affect the guilt phase of a case. But here, Defendant Baca's need for substance abuse treatment pretrial will remain irrespective of outcome. It does not matter if there is an acquittal, a guilty plea, or a guilty verdict—Defendant Baca can seek substance abuse treatment at any time (just not now). Permitting him to attend Cenikor prioritizes his interests above his co-Defendants—co-Defendants who likely do not want to wait for Defendant Baca to complete 90 days of treatment (or, alternatively, wait around for him to abscond, avoid arrest, and otherwise delay trial).

This is especially true when, as here, the United States opposed his request for this pretrial substance abuse treatment. As always, the United States bears the burden of proof. And the Court is cognizant of the fact that a criminal trial is not a fine wine—it does not get better with age. Thus, the United States may suffer prejudice from this delay—as "witnesses may become unavailable or

---

[16] Crystal Kelley and Manuel Young made their initial appearance on February 9, 2023 (**Doc. 8**). Then, on February 22, 2023, the Indictment (**Doc. 22**) was filed. Defendant Baca did not make his initial appearance until July 14, 2023 (after being arrested). *See* **Docs. 23, 42, 43**.

their memories may fade." *United States v. Muhtorov*, 20 F.4th 558, 650 (10th Cir. 2021) (citing *Barker*, 407 U.S. at 521); *see also United States v. Hunter*, 9 F. App'x 857, 861 (10th Cir. 2001) (unpublished) (noting that the United States' case becomes weaker with the passage of time). Put simply, sending Defendant Baca to months-long pretrial substance abuse treatment may also prejudice the United States.

In this Court's view, Defendant Baca's personal desires do not outweigh the myriad of competing speedy trial interests.

## CONCLUSION

For the reasons stated above, the Court finds that Defendant Baca is an irremediable flight risk based on facts supported by a preponderance of the evidence. The Court also finds, by clear and convincing evidence, that Defendant Baca poses a risk of danger to the community that cannot be mitigated with any condition or combination of conditions. Therefore, the Bail Reform Act mandates detention.

The Court has assessed the record, the evidence and proffers presented at the hearings, contemplated the risks, evaluated the feasibility and viability of conditions, and determined that there exist no conditions, or combination thereof, that will reasonably assure that the safety of the community or Defendant Baca's appearance if he were to be released to Cenikor (even with GPS location monitoring). Accordingly, the Court **GRANTS** the United States' Appeal (**Docs. 70 & 82**), **REVERSES** the Magistrate Judge's Order (**Doc. 69**), and **DETAINS** Defendant Baca.

Defendant Baca shall remain in the custody of the U.S. Marshal pending trial or further order of the Court.

**IT IS SO ORDERED.**


                                  /s/
                                **WILLIAM P. JOHNSON**
                                **CHIEF UNITED STATES DISTRICT JUDGE**